UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
THE NEW YORK TIMES and MICHAEL       :
SCHMIDT,                             :
                                     :          14cv328 (DLC)
                    Plaintiffs,      :
         -v-                         :          OPINION & ORDER
                                     :
UNITED STATES DEPARTMENT OF JUSTICE, :
                                     :
                    Defendant.       :
                                     :
------------------------------------ X

APPEARANCES:

For Plaintiffs:
David E. McCraw
D. Victoria Baranetsky
The New York Times Company, Legal Department
620 Eighth Avenue
New York, New York 10018

For Defendant:
Carina H. Schoenberger, Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007

DENISE COTE, District Judge:

    This Opinion addresses cross motions for summary judgment in

a Freedom of Information Act ("FOIA") action.  Plaintiffs, the

New York Times and its reporter Michael Schmidt ("Schmidt"), seek

documents relating to changes in the policy of the Bureau of

Alcohol, Tobacco, Firearms, and Explosives ("ATF") following the

United State Supreme Court's decision in United States v. Jones,

132 S. Ct. 945 (2012).  The plaintiffs challenge ATF's decision

to withhold or redact six different items in its document

production.  The defendant United States Department of Justice ("DOJ") contends that the withheld documents or passages are exempt from production under the principles established by FOIA. For the following reasons, the defendant's motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed.  On January 23, 2012, the Supreme Court of the United States held in United States v. Jones that the attachment of a Global-Positioning-System ("GPS") tracking device to a vehicle, and subsequent use of that device to monitor the vehicle's movements on public streets, was a search within the meaning of the Fourth Amendment and required a warrant under ordinary circumstances.  Jones, 132 S. Ct. at 946.

On June 20, 2012, Schmidt made a FOIA request to ATF's Disclosure Division.  Schmidt requested, inter alia, "documents sufficient to show how your agency has advised its agents and employees to use trackers in response to [Jones]" and "documents sufficient to show how your agency advised its agents and employees to conduct surveillance in response to [Jones]."  ATF granted the request in part on November 23, 2012, releasing some seventy pages of documents.  That production included documents redacted pursuant to three FOIA exemptions: Exemption 5 (deliberative process, attorney-client, and work product privileges); Exemption 6 (privacy); and Exemption 7(E) (investigatory materials).  5 U.S.C. § 552(b)(5)–(7).  ATF also

2

advised Schmidt that responsive "documents or portions thereof that did not originate with [ATF] [were] referred to either the Department of Justice's (DOJ) Office of Information Policy or the DOJ's criminal division requesting that those offices respond directly to you."[1]   ATF also advised Schmidt that, "[i]nsofar as [the FOIA] request has been denied in part, [he] may submit a request for an administrative appeal . . . ."

Schmidt appealed to the Office of Informational Policy ("OIP") on December 19, 2012, insofar as the denial was based on two of the three FOIA exemptions: Exemption 5 and Exemption 7(E). In January 2013, the OIP notified the plaintiffs that it had received the December 19 appeal.  OIP never issued any decision on this appeal during the year that followed, and closed the appeal of February 6, 2014, after plaintiffs filed this lawsuit.

On April 8, 2013, in response to ATF's referral, the Criminal Division of DOJ released three more pages, and withheld sixty-eight pages pursuant to Exemptions 5, 6, 7(C), and 7(E).[2] The Criminal Division advised Schmidt of his right to an administrative appeal, and that the appeal must be received within 60 days.  OIP responded to ATF's referral on September 26,

---

[1] The referral to the Office of Information Policy was for documents originating or maintained by the Office of the Deputy Attorney General ("DAG").

[2] Exemption 7(C) relates to information compiled for law enforcement purposes whose disclosure could reasonably constitute an invasion of privacy.  5 U.S.C. § 552(b)(7)(C).

2013, for materials originating with the DAG.  OIP released some documents and withheld others pursuant to Exemptions 5, 6, and 7(C).  OIP also advised Schmidt of his right to an administrative appeal, and the deadline for filing an appeal.  Schmidt did not appeal either the Criminal Division decision of April 8 or the OIP decision of September 26.[3]

The plaintiffs filed this lawsuit on January 17, 2014.  ATF made an additional referral of documents to the Federal Bureau of Investigation ("FBI") on February 20.  On March 5, the FBI responded, withholding the referred document pursuant to Exemption 5.  The defendant moved for summary judgment on June 12.  Plaintiffs cross moved for summary judgment on July 2.  On December 29, the defendant was ordered to produce the documents at issue for in camera review.  On January 23, 2015, this action was transferred to this Court.

Plaintiffs challenge the withholding or redaction of six items, described hereinafter as Items One through Six.  A description of the withheld text accompanies the discussion of the items.

In addition to the in camera submission, the evidence submitted with these motions includes: documentation of the

---

[3] The plaintiffs state that they do not have a record of receiving either the Criminal Division or OIP decision, but do not dispute that the decisions were sent and the addresses on the letters are their addresses.

4

plaintiffs' FOIA request and appeal, a <u>Vaughn</u> index[4] describing the withheld content and the exemptions justifying withholding, two declarations from David M. Hardy ("Hardy"), the Section Chief of the Record/Information Dissemination Section of the FBI, and a declaration from Melissa A. Anderson ("Anderson"), the attorney who drafted the ATF documents and emails at issue in this litigation.  At the time, Anderson was the Deputy Associate Chief Counsel of ATF's Litigation Division.  Anderson's declaration describes the process by which she created the ATF documents at issue, as well as the function of these documents.  Hardy's first declaration details the FBI's involvement with the FOIA request, and its decision to withhold the document referred to the FBI on February 20, 2014.  Hardy's second declaration describes the process of creating the FBI document and its purpose and function.

## DISCUSSION

FOIA was enacted in 1966 "to improve public access to information held by government agencies."  <u>Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n</u>, 585 F.2d 1382, 1384 (2d Cir. 1972).  It "expresses a public policy in favor of disclosure so that the public might see what activities federal

---

[4] A <u>Vaughn</u> index lists titles and descriptions of withheld documents.  <u>New York Times Co. v. U.S. Dep't of Justice</u>, 762 F.3d 233, 237 (2d Cir. 2014).  "The purpose of a Vaughn index is to afford a FOIA plaintiff an opportunity to decide which of the listed documents it wants and to determine whether it believes it has a basis to defeat the Government's claim of a FOIA

agencies are engaged in." A. Michael's Piano, Inc. v. F.T.C., 18 F.3d 138, 143 (2d Cir. 1994). FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions. 5 U.S.C. § 552(a)(3)-(b); see also Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976). The statutory exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Dep't of the Interior and Bur. of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (citation omitted). The exemptions are thus to be "given a narrow compass." Id. (citation omitted); see also Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005).

Summary judgment is the procedural vehicle by which most FOIA actions are resolved. See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993). A federal court must "conduct de novo review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure." A Michael's Piano, 18 F.3d at 143. "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to

exemption." Id.

sustain the agency's burden." <u>Id.</u>  Absent any showing to the contrary, "[a]ffidavits submitted by an agency are accorded a presumption of good faith." <u>Id.</u> (citation omitted).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible record for FOIA purposes." <u>F.B.I. v. Abramson</u>, 456 U.S. 615, 626 (1982) (citation omitted).

FOIA lists nine exclusive exemptions.  5 U.S.C. § 552(b); <u>see also</u> <u>Rose</u>, 425 U.S. at 361.  Two of these exemptions are relevant here: Exemption 5 and Exemption 7(E).  Analysis of a document and whether it is exempt from FOIA disclosure requires inquiry into the process by which the document was created. <u>Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice</u>, 697 F.3d 184, 202 (2d Cir. 2012).

**Exemption 5**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption includes the attorney-client, work product privilege, and executive privilege. <u>Grand Cent. P'Ship, Inc. v. Cuomo</u>, 166 F.3d 473, 481 (2d Cir. 1999).  The executive privilege includes the deliberative process privilege.

Id.

The deliberative process privilege applies to documents that are predecisional and deliberative.  Brennan Ctr., 697 F.3d at 194.  A document is predecisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision" and deliberative if it is "actually related to the process by which policies are formulated."  Id.  (citation omitted).

Even those documents that are predecisional and deliberative must be disclosed, however, when the document represents "an opinion or interpretation that embodies the agency's effective law and policy, in other words, its 'working law.'"  Id. at 195 (citing N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 154 (1975)).  The "working law analysis is animated by the affirmative provisions of FOIA, and documents must be disclosed if more akin to that which is required . . . to be disclosed than that which may be withheld . . . ."  Id. at 200.  FOIA generally requires disclosure of "final opinions, statements of policy and interpretations which have been adopted by the agency, and instructions to staff that affect a member of the public."  Id. at 201 (citation omitted).  An "opinion about the applicability of existing policy to a certain state of facts, like examples in a manual," constitute working law and accordingly do not fall within the scope of the deliberative privilege.  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).  Documents that advise agency personnel of likely legal challenges

8

and potential defenses, however, do not constitute working law.
Delaney, Migdail & Young, Chartered v. I.R.S., 826 F.2d 124, 127
(D.C. Cir. 1987).

Exemption 5 also encompasses the attorney-client privilege.
"The attorney-client privilege protects communications (1)
between a client and his or her attorney (2) that are intended to
be, and in fact were, kept confidential (3) for the purpose of
obtaining or providing legal assistance." Brennan Ctr., 697 F.3d
at 207 (citation omitted). "The attorney-client privilege
protects most confidential communications between government
counsel and their clients that are made for the purpose of
obtaining or providing legal assistance." Id. (citation
omitted). The working law doctrine applies as well to privileged
documents and may require production of a document otherwise
entitled to be withheld under Exemption 5 as a privileged
attorney-client privilege. Id. at 207-208; see also Sears, 421
U.S. at 153; Nat'l Council of La Raza, 411 F.3d at 360 ("[T]he
attorney-client privilege may not be invoked to protect a
document adopted as, or incorporated by reference into, an
agency's policy.").

Finally, Exemption 5 includes the work product privilege,
which protects documents where, "in light of the nature of the
document and the factual situation in the particular case, the
document can fairly be said to have been prepared or obtained
because of the prospect of litigation." United States v. Adlman,

134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted).  The
purpose of the work product privilege is to protect the integrity
of the adversarial process.  Jordan v. U.S. Dep't of Justice, 591
F.2d 753, 775 (D.C. Cir. 1978), disapproved on other grounds by
Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051
(D.C. Cir. 1981) (en banc).  In the FOIA context, the Court of
Appeals for the District of Columbia observed that the critical
inquiry is the function of the documents at issue.  Delaney, 826
F.2d at 127.  Neutral policy interpretations "must at least have
been prepared with a specific claim supported by concrete facts
which would likely lead to litigation in mind" in order for the
work product privilege to apply.  Coastal States, 617 F.2d at
865.  Moreover, "[t]he mere fact that [a document] deal[s] with
specific factual situations is not sufficient [to invoke the work
product privilege]; if an agency were entitled to withhold any
document prepared by any person in the Government with a law
degree simply because litigation might someday occur, the
policies of the FOIA would be largely defeated."  Id.; see also
Jordan, 591 F.2d at 775-76 (declining to apply the work product
privilege to law enforcement manual).  Nonetheless, documents
that advise agency personnel of types of legal challenges likely
to be mounted against a proposed action, and possible defenses,
are protected by the work product privilege.  Delaney, 826 F.2d
at 127.

**Exemption 7(E)**

Exemption (b)(7)(E) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. . . .

5 U.S.C. § 552(b)(7)(E).  This exemption covers "investigatory records that disclose investigative techniques and procedures not generally known to the public."  Doherty v. United States Dep't of Justice, 775 F.2d 49, 52 n.4 (2d Cir. 1985).  "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  Blackwell v. F.B.I., 646 F.3d 37, 40 (D.C. Cir. 2011) (citation omitted). Exemption 7(E) sets a "relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  Id. at 42 (citation omitted).  The qualifying phrase "if such disclosure could reasonably be expected to risk circumvention of the law" modifies only

11

"guidelines" and not "techniques and procedures."  Allard K.
Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.,
626 F.3d 678, 681 (2d Cir. 2010).

**Exhaustion**

    Agencies other than ATF drafted several of the items at
issue.  As part of the November 23, 2012 partial denial of the
plaintiffs' FOIA request, ATF referred these documents to the
originating agencies.[5]  Exhaustion of administrative remedies is
generally required prior to initiating a FOIA lawsuit.  The
parties dispute whether the plaintiffs' December 19
administrative appeal exhausted the plaintiffs' remedies with
regard to the referred documents.  Under FOIA, exhaustion is a
prudential consideration rather than a jurisdictional
prerequisite.  Hull v. I.R.S., U.S. Dep't of Treasury, 656 F.3d
1174, 1181 (10th Cir. 2011); Wilbur v. C.I.A., 355 F.3d 675, 677
(D.C. Cir. 2004).  Accordingly, the merits of the claims and
defenses may be reached without resolving the exhaustion issue.
In this case, given the passage of time and the parties'
extensive submissions, it is appropriate to reach the merits of
their dispute.

**1. Item One**

    Item One is a redacted internal ATF email that was sent to

---

[5] ATF made an additional referral of one document to the FBI on
February 20, 2014.  Because this referral occurred after
litigation commenced, exhaustion is not at issue with this
document.

all ATF Special Agents in Charge.  The redacted portions of the
document were withheld pursuant to Exemption 5.  The email is
dated January 24, 2012, which is the day following the issuance
of the Jones decision.  It was distributed at 2:58 p.m.  The
unredacted portion of the document reads, in part:

> As you may be aware, the Supreme Court issued an
> opinion yesterday that law enforcement's placement of a
> GPS tracker on a subject's vehicle constitutes a search
> covered by the Fourth Amendment and therefore requires
> a warrant.  DOJ will be issuing a detailed guidance
> memorandum.  In the meantime, I want to provide you
> with preliminary guidance from ATF's Office of Chief
> Counsel . . . .

(Emphasis supplied.)  This email is also reproduced as part of an
email chain in Item Four.[6]

Anderson describes Item One as "preliminary, draft guidance"
that reflected her "legal opinion as to what [she] believed to be
the best practices in the absence of a final, binding policy for
all DOJ law enforcement agencies."  She describes her advice as
"discre[te] opinions to specific, ongoing situations ATF agents
were encountering in the immediate aftermath of Jones" and notes
that her advice was not binding on ATF agents.  Her advice was
not incorporated into any final agency opinion, adopted as
policy, retained, or referred to as precedent within ATF.

ATF redacted three paragraphs of the five paragraphs in the
email pursuant to the deliberative process privilege and the

---

[6] Because much of the disputed material in this case involves
email chains, text from one item may appear multiple times.
Where appropriate, this is noted in the description of the items.

attorney client privilege.  The fourth paragraph was also
redacted under the work product privilege.  It is only necessary
to reach one of these grounds.  Because the redacted paragraphs
are protected by the attorney-client privilege, and do not
constitute ATF's working law, Item One was properly withheld from
plaintiffs.

The attorney-client privilege protects communications
between a client and its attorney that are intended to be, and in
fact were, kept confidential for the purpose of obtaining or
providing legal assistance.  Brennan Ctr., 697 F.3d at 207.  ATF
has met its burden in demonstrating that the communication
satisfies these requirements.  The communication is between
Anderson, an ATF attorney, and employees of ATF, and was kept
confidential.  The email is intended to provide legal guidance to
ATF personnel.  The redacted paragraphs describe Anderson's
perceptions of the "best practices" in the immediate wake of
Jones.

The plaintiffs argue that the redacted paragraphs are
subject to disclosure as working law.  They are not.  As the
disclosed portion of the email indicates, it is "preliminary"
guidance.  The paragraphs are not properly characterized as a
"final opinion[]" or a "statement[] of policy and
interpretation[] adopted by" ATF that would otherwise constitute
working law.  Brennan Ctr., 697 F.3d at 201.  An email,
distributed on the day following the Jones opinion by a person

14

who lacks final authority to make policy is not a final opinion.
Indeed, the email promises that DOJ will issue detailed guidance.
Accordingly, the redacted paragraphs were properly withheld.

**2. Item Two**

Item Two contains two internal ATF emails circulating
an email sent by the Office of the DAG on January 23, 2012,
that is, on the day of the Jones decision.  The unredacted
portion of the first ATF email reads, in part: "[Redacted]
and I just returned from a meeting at the DOJ.  The Criminal
Division will be providing guidance on post-Jones GPS
issues, but it will take a few days . . . ."  Below this
text is an email with the subject line: "Appellate Section
Report: United States v. Jones . . . ."  The body of the
email is entirely redacted.  The email was sent to a number
of individuals, presumably within ATF.  The role and
function of the individuals who received this email is not
described in the defendant's submissions.

The second ATF email in Item Two circulated the
identical DAG email to all ATF Special Agents in Charge.
The second email was sent on January 24, 2012, at 10:16 a.m.
The text forwarding the DAG email reads:

> Below you will find some important information from the
> Department of Justice regarding the Supreme Court
> opinion release[d] yesterday about the use of GPS
> tracking devices, United States v. Jones.  It is
> important that all ATF employees follow DOJ guidance in
> this area without hesitation.  I highlighted one very
> important sentence below for your immediate attention.

15

The highlighted sentence is redacted.  This email is also reproduced as part of email chains in Item Four and Item Six.

The redacted information in both emails originated with the Office of the DAG.  As a result, ATF referred the plaintiffs' FOIA request concerning this material to OIP.  On September 26, 2013, OIP advised the plaintiffs of its decision to withhold this material under the deliberative process and work product privilege, as well as Exemptions 6 and Exemption 7(C), both of which relate to the privacy of third parties.

The textual redactions in Item Two were properly made under the work product privilege.  A document constitutes work product when, in light of the surrounding facts and circumstances, it is prepared "because of" the prospect of litigation.  Adlman, 134 F.3d at 1202.  The critical inquiry is the function of the document.  Delaney, 826 F.2d at 127.  The document provides guidance on steps prosecutors should take to minimize the impact of Jones on anticipated litigation.

The plaintiffs contend that the email constitutes ATF's own working law.  This argument fails.  There is no indication that ATF adopted the guidelines described by the DAG as its own final policy.  Within a few hours of sending out the January 24 email (which forwarded the DAG guidance), ATF sent an email explaining that it would take DOJ a few days to provide more complete guidance.  Moreover, the emails circulating the DAG guidance

16

among ATF personnel were sent before Item One, ATF's own preliminary guidance email, was distributed on January 24 at 2:58 p.m.  This indicates that, while Anderson distributed the DAG guidance, she formulated her own preliminary views for ATF.

**3. Item Three**

Item Three consists of an internal email sent on January 25, 2012, to ATF Special Agents in Charge.  Information was withheld from this document pursuant to Exemptions 5 and 7(E) because it responds to specific factual scenarios and discusses technical aspects of GPS tracking devices.  The withheld portions of the document include technical information about GPS tracking devices that is not public knowledge.

Plaintiffs contend that this document is the working law of ATF, and that the technology discussed in the document, GPS tracking devices, is already known to the public.  ATF has shown that these redactions were properly made under Exemption 7(E) because the release of the requested information would create a risk of a circumvention of the law.  See Blackwell, 646 F.3d at 42.

**4. Item Four**

Item Four is an email chain composed of three separate internal emails sent among ATF personnel.  Two of these emails are identical to the emails contained in Items One and Two, and have already been addressed.

The third email contains text copied from a guidance

17

document originating with the FBI.  The unredacted text generated by ATF personnel reads: "An FYI, this is what the FBI sent out." The ATF email is dated January 24, 2012.  In response to this FOIA request, ATF referred the text from the third email to the FBI on February 20, 2014.  On March 5, 2014, the FBI informed ATF of its determination that the text drafted by the FBI should be withheld pursuant to the deliberative process privilege and work product privilege.

Hardy's second declaration describes the role the text from Item Four played in the FBI's decision-making process.  Hardy states: "[Item Four] contained pre-decisional, preliminary legal guidance by FBI's Office of General Counsel ("OGC") to FBI Special Agents in Charge . . . and does not represent any final policy . . . .  The FBI's OGC provided its opinion to educate FBI agents about the Jones decision and provide 'stop gap' advice . . . ."  Hardy further states that the interim advice did not establish any official policy, and never went through any formalized process.

Item Four was properly withheld under the work product privilege.  Like other material distributed on January 23 and 24, the guidance from FBI attorneys was intended to provide legal advice to agents regarding the use of GPS monitoring.  The function of such quickly-drafted, temporary guidance following a change in the law is not to set agency policy, but rather to minimize difficulties in anticipated litigation.

18

Plaintiffs contend that Item Four represents the working law of ATF and the FBI.  The argument that Item Four constitutes ATF's working law fails.  The email was sent on the day after the Jones decision.  There is no basis to find that ATF adopted on that day as its own policy the preliminary guidance given by the FBI.  Indeed, the ATF email says:  "An FYI, this is what the FBI sent out."  It does not even instruct ATF personnel to follow the guidance described.  ATF had sent its own preliminary guidance email previously that same day.

The argument that the memorandum constitutes the FBI's working law similarly lacks merit.  The FOIA request was directed to ATF and asked for documents "sufficient to show how your agency advised its agents and employees to use trackers" (emphasis supplied) following Jones and documents "sufficient to show how your agency advised its agents . . . to conduct surveillance" (emphasis supplied) in response to Jones.  To the extent that Item Four is the FBI's working law -- as opposed to ATF's -- it is not responsive to the FOIA request.  Moreover, without the entirety of the original FBI document from which this text was taken, information critical to the working law inquiry -- such as the manner of distribution, subject line, date, recipients, sender, and any other text -- is missing.  To the extent that the plaintiffs seek disclosure of this document as the working law of the FBI, the proper recipient for such a request must be the FBI.

19

In any event, based on the present record, the defendant has shown that Item Four does not constitute the working law of the FBI.  The guidance was drafted within hours of the <u>Jones</u> decision.  In this sense, it is much closer in form and function to predecisional, deliberative documents that are generally exempt from disclosure under FOIA than an agency's working law. <u>Brennan</u>.  697 F.3d at 202.  The affidavits submitted by the defendant are sufficient to demonstrate that, notwithstanding the fact that the FBI guidance email is written as a series of instructions to agents, it is not, and never was, the effective law and policy of the FBI.

**5. Item Five**

Item Five contains three separate guidance memoranda, as well as an email sending two of these memoranda to ATF personnel.  ATF referred all three memoranda to the Criminal Division, and the Criminal Division advised the plaintiffs of its decision on April 8, 2013.  The first memorandum is a seven page document, summarizing a longer guidance memorandum, tailored for agents ("Agent Guidance Memo").  The introduction and conclusion of this memorandum indicate that it should be used by agents to identify situations where further consultation with a U.S. Attorney or Divisional Counsel is necessary.  The second memorandum is a three page "cheat sheet," describing likely challenges to ATF's actions, defenses, and probable outcomes ("Cheat Sheet Memo").  These two documents were sent to ATF personnel as attachments to

an email dated March 8, 2012.  The email states:

> Attached please find a summary of the guidance provided
> by Criminal Appellate regarding GPS surveillance and
> <u>Jones</u>.  The first attachment is written with the agents
> in mind, so please share with your field divisions.
> The second attachment is more of a cheat sheet for you.
> As with the official Crim. Appellate memo, please do
> not provide outside the Department.

Other than the name of the ATF employee who drafted the email, no

additional text is redacted.  The third memorandum was sent on

February 27, 2012, to all federal prosecutors from the Criminal

Appellate Section of DOJ ("Final Guidance Memo").  The Final

Guidance Memo is 57 pages long, and contains detailed guidance

for prosecutors summarizing the legal arguments and defenses that

should be made in post-<u>Jones</u> litigation regarding GPS tracking

devices.  The Criminal Division withheld all three memoranda

pursuant to the deliberative process privilege, work product

privilege, and attorney-client privilege, as well as Exemptions

6, 7(C), and 7(E).

The Final Guidance Memo, directed to prosecutors, advises

prosecutors on how to represent the Government in future

litigation, and discusses possible legal challenges to Government

actions, potential defenses, and likely outcomes.  Documents

describing legal positions and defenses that go beyond expressing

neutral statements and interpretations of the law are protected

by the work product privilege.  <u>Delaney</u>, 826 F.2d at 127; <u>cf.</u>

<u>Jordan</u>, 591 F.2d at 775-76.  This is precisely the kind of

document that is prepared "<u>because of</u> the prospect of litigation"

21

and would not exist in similar form absent such a possibility. Adlman, 134 F.3d at 1202.  The Cheat Sheet Memo, which summarizes the key points of the Final Guidance Memo, also describes the best defenses and likely legal challenges to the actions of ATF personnel.  Thus, the Cheat Sheet Memo is also protected by the work product privilege.

The Agent Guidance Memo, directed at ATF agents, and sent to ATF personnel, incorporates by reference the assessments made in the Final Guidance Memo.  It does not instruct agents to take specific actions that would affect a member of the public.  The introduction and conclusion of the Agent Guidance Memo make it clear that this document is not intended to provide final directives to agents, but to aid them in identifying situations where consultation with the U.S. Attorney's Office or Divisional Counsel is necessary.  Thus, the Agent Guidance Memo, like the other memoranda, is not a neutral policy statement or interpretation of ATF's responsibilities.  Such a document was prepared because of the prospect of litigation, and constitutes attorney work product.

The plaintiffs primarily argue that the work product privilege does not protect these documents because they constitute ATF's working law.  This argument fails.  Policy interpretations and statements that go beyond providing a neutral analysis of an agency's obligations under the law are not working law.  See Delaney, 826 F.2d at 127.  Moreover, the policy

justifications underpinning the working law principle do not support disclosure under these circumstances.  In N. L. R. B. v. Sears, Roebuck & Co., the seminal Supreme Court decision on the subject, the Court articulated the justification for the working law principle as being to prevent agencies from developing "secret [] law."  Sears, 421 U.S. at 153.  Thus, a memorandum directing that no complaint should be filed is subject to disclosure as working law; it constitutes a final decision by the agency that would otherwise remain nonpublic.  Id. at 155-56.  By contrast, a memorandum directing that a complaint be filed is not subject to FOIA disclosure because "the subject matter, theory, and interpretation" in this memorandum "will ultimately be ventilated" through the course of litigation.  Id. at 156.  Here, DOJ's views regarding the likely challenges to the use of GPS tracking devices and available defenses to those challenges will be borne out publicly in court.  Because the positions described in these three memoranda will ultimately become public, the "secret law" rationale does not support the application of the working law principle in this situation.

**6. Item Six**

Item Six contains an internal ATF email chain distributing the Final Guidance Memo to ATF personnel.  All emails in the chain were sent on February 27, 2012.  The first email was sent by the drafter of the Final Guidance Memo, an employee of the Criminal Appellate Section.  The text of this email discusses the

content of the Final Guidance Memo and highlights several passages for the benefit of law enforcement personnel.  ATF referred this text to the Criminal Division.  As part of the April 8 decision, the Criminal Division advised the plaintiffs that it withheld the material under, inter alia, the deliberative process privilege, work product privilege, and attorney-client privilege.  The second email, sent by an ATF employee to unspecified individuals, reads: "Final Guidance on Jones is attached.  Please advise your respective field divisions."  The third email, sent by a different ATF employee, reads: "Please make sure that Field Ops is so advised."  Other than the names of employees, no additional text is redacted from the second and third emails in the chain.

The redacted text in the first email describing the Final Guidance memorandum is not subject to disclosure.  The redacted text discusses specific points in the memoranda and includes informal comments describing the creation of memoranda.  The email is therefore exempt from disclosure under FOIA to the same extent as the underlying memoranda.

**Segregability**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Following in camera review, the Court is satisfied that all reasonably segregable non-exempt portions of the disputed

documents have been disclosed.

## CONCLUSION

The defendant's June 12 motion for summary judgment is granted.  The plaintiffs' July 2 motion for summary judgment is denied.  The Clerk of Court shall enter judgment for the defendant and close the case.


Dated:   New York, New York
         March 31, 2015

_____

DENISE COTE
United States District Judge